# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS CIPRIANO MALDONADO, | Case No. 1:17-cv-01236-LJO-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JOHN GARZA,[1] | ORDER DIRECTING CLERK OF COURT TO AMEND CAPTION |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

Petitioner was convicted after a jury trial in the Kern County Superior Court of battery resulting in serious bodily injury. The trial court found to be true the allegation that Petitioner served five prior prison terms, and Petitioner was sentenced to an imprisonment term of six years. People v. Maldonado, No. F070557, 2017 WL 945109, at *1 (Cal. Ct. App. Mar. 10, 2017). On March 10, 2017, the California Court of Appeal, Fifth Appellate District affirmed the judgment. Id. at *5. The California Supreme Court denied Petitioner's petition for review on June 21, 2017. (LDs[2] 7, 8).

---

[1] Warden John Garza is Petitioner's custodian. (ECF No. 9 at 8 n.1). Accordingly, Warden Garza is substituted as Respondent in this matter. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996).

[2] "LD" refers to the documents lodged by Respondent on November 20, 2017. (ECF No. 10).

On September 15, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Therein, Petitioner raises the following claims for relief: (1) erroneous admission of witness dissuasion evidence, in violation of due process; and (2) ineffective assistance of counsel. Respondent has filed an answer. (ECF No. 9).

## II.

### STATEMENT OF FACTS[3]

On July 12, 2014, Ignacio and Constance Tapia[4] hosted a party at their home in Bakersfield. Defendant, Ignacio's nephew, arrived at around 5:00 p.m. Constance "didn't care for him to be there" and both she and Ignacio asked him to leave. Defendant left the premises after he greeted his siblings but came back sometime before 6:00 p.m. Again, Ignacio and Constance asked him to leave. Defendant departed 15 to 20 minutes later but returned by 8:00 p.m. Constance notified Ignacio and Ignacio asked defendant to leave for a third time. In response, defendant sat inside Ignacio's Ford Expedition, which was parked on the driveway. Ignacio implored, "Please leave, Santos. You are not welcome here at this time." Defendant inquired, "Why does everybody have to party and I can't?" Ignacio replied, "Because of your history." Defendant exited the vehicle and sat in a swing in the yard. Ignacio asked him once more to leave the party. Defendant left but came back at around 9:30 p.m. By then, an estimated 20 to 25 guests were in attendance, most of whom congregated outside. Defendant "grabbed a beer from a female's hand and started drinking it." Constance shouted, "I told you not to come over no more[!]" Ignacio and other guests tried to convince defendant to leave, but to no avail.

At around 10:30 p.m., defendant's cousin Christopher Acosta arrived. He and defendant talked while standing on opposite sides of the property's chain-link fence: Acosta faced the house and defendant faced the street. Acosta said, "Santos, what's wrong? We are family. I love you. ... [¶] ... [¶] ... We are family. Primo,[5] we are family." He then tried to hug defendant over the fence. After the second or third attempt, defendant punched Acosta in the face and retrieved a black ceramic coffee mug from a dining table in the yard. The guests were upset with defendant for striking Acosta and told defendant to leave. In addition, Acosta entered the yard and remarked, "Santos, we are family. We are cousins. Why are you doing this? Why did you hit me for?" The guests, including Acosta, did not hold any objects, let alone weapons. Ignacio instructed the crowd, "Give him room to leave. Move away from him. Give him a path to the ... front gate. [¶] ... [¶] ... Give him room. Let ... Santos leave." Although the guests complied, defendant "back-pedal[ed]" and entered a shed at the rear of the property. Acosta followed him. Before he could "tell [defendant] again that [they] are family," Acosta was struck with either a "glass," "bottle," or "cup." He ended up "pulling out big-old pieces of glass out of [his] face." Ignacio saw defendant next to the fence and urged him to flee. Defendant "jumped over the fence and ran."

---

[3] The Court relies on the California Court of Appeal's March 10, 2017 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

[4] To avoid confusion, we distinguish individuals who share the same surname by their given names.

[5] "Primo" means "cousin" in Spanish.

Sheriff's deputies arrived at the residence after midnight. They interviewed Ignacio as well as Acosta. Acosta appeared "kind of dazed" and his face was "covered in blood." The deputies observed black ceramic shards and fresh bloodstains near the shed.

Meanwhile, Anita Rubio, a neighbor, was hosting her own party. She went outside and spotted defendant, who "looked like he was hiding." Rubio asked him what he was doing. Defendant "put a finger up in front [of] his mouth" and muttered, "Shhh." Rubio saw the deputies nearby and shouted, "He is right here [!]" Defendant tried to escape but was apprehended. At the time of his arrest, he was holding a bandana in one hand, which was bleeding profusely.

Acosta was subsequently transported to San Joaquin Community Hospital, where he was examined by Dr. Jason Manuell, an emergency department physician. Acosta sustained lacerations on the bridge of the nose and around the left eye, which were sutured by Manuell. Acosta's eye remained bruised and swollen for about four weeks. At trial, Manuell opined Acosta's injuries were "consistent with being struck with an object."

Maldonado, 2017 WL 945109, at *1–2 (footnotes in original).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Harrington v. Richter</u>, 562 U.S. 86, 97–98 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70–71 (2003); <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id.</u> In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2009) (quoting <u>Wright v. Van Patten</u>, 552 U.S. 120, 125 (2008)); <u>Panetti v. Quarterman</u>, 551 U.S. 930 (2007); <u>Carey v. Musladin</u>, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. <u>Musladin</u>, 549 U.S. 70; <u>Wright</u>, 552 U.S. at 126; <u>Moses</u>, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412–13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405 (quoting Webster's Third New

International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing

Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## IV.

## REVIEW OF CLAIMS

### A.  Admission of Witness Dissuasion Evidence

In his first claim for relief, Petitioner asserts that the trial court violated his due process rights when it admitted Ignacio Tapia's testimony regarding Petitioner's mother's attempt to dissuade Ignacio from testifying. (ECF No. 1 at 16–22).[6] Respondent argues that the state court's rejection of this claim was not an unreasonable application of Supreme Court precedent. (ECF No. 9 at 15–18).

Petitioner raised this claim on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013); Ylst, 501 U.S. at 806.

---

[6] Page numbers refer to ECF page numbers stamped at the top of the page.

In denying relief with respect to Petitioner's challenge to the admission of Ignacio Tapia's testimony regarding dissuasion, the California Court of Appeal stated:

**I. The trial court's admission of evidence that defendant's mother attempted to dissuade Ignacio from testifying did not constitute prejudicial error.**

a. *Background.*

On October 15, 2014, Ignacio was sworn as a prosecution witness outside the jury's presence. The trial court remarked, "Mr. Tapia, it's been represented to me through the prosecutor that ... you are going to plead the Fifth, something to that effect." When asked whether he would do so, Ignacio answered, "No." The prosecutor then conducted a voir dire examination:

"Q Mr. Tapia, do you recall speaking with me this morning via telephone?

"A Yes.

"Q Do you recall telling me that, quote, unquote, they are telling you to take the Fifth?

"A True.

"Q Okay. You do recall that?

"A Yes.

"Q Okay. What specifically were you told about taking the Fifth when you come to court?

"A I was told not to testify and please plead the Fifth.

"Q And, sir, who told you that?

"A Other family members.

"Q Any family members in particular?

"A [Defendant]'s mother. [¶] ... [¶]

"Q And when did that happen, sir?

"A Yesterday.

"Q Okay. And how did she get ahold of you? Is it by telephone[?]

"A No. She came to visit.

"Q Did she visit you in person?

"A Yes.

"Q And her request of you was specifically not to testify today?

"A She stated, 'Are you going to plead the Fifth?' [¶] I told her, 'No. I've been subpoenaed, and I have to testify.' "

After Ignacio exited the courtroom, the court asked the prosecutor whether he would raise the issue in front of the jury. The prosecutor replied:

"I would like to, Your Honor. ... I think ... it would directly affect [Ignacio's] demeanor while testifying. I think it would be relevant for that purpose. And so I would ask the Court to allow me to question him on ... whether ... anybody has attempted to dissuade him from testifying in this matter."

Defense counsel objected:

"[F]irst, I'd make an oral in limine motion to exclude any evidence of or reference to somebody either in a vague sense or specifically identifying somebody such as [defendant's mother] telling or requesting Mr. Tapia to plead the Fifth if called to testify. It is not relevant to prove or disprove any fact in question in this case.

"And, pursuant to Evidence Code Section 352, I also believe it should be excluded as it will create an undue prejudice against my client. The information is that it's [defendant]'s mother asking a family member to not testify, not [defendant]. So it's the defense position that it's not relevant to ... any issue in this case. And I don't believe it needs to be addressed in front of the jury based on those grounds."

Subsequently, the court admitted the dissuasion evidence:

"The Court will allow introduction of that issue to be presented to the jury since it does go directly toward the witness's credibility as it relates to any potential bias or reasons why or motivation why he would testify the way he does.

"The Court does find that it is significant as it relates to the witness's credibility, and that significance and its probative value would certainly outweigh any prejudicial effect[,] recognizing that witness intimidation or witness dissuasion is certainly a credibility determination to be made by the jury and it is an area that does not have to originate or arise by ... defendant's direct involvement. That is not ... necessary.

"So, for those reasons, the Court will allow the People to address ... [defendant's mother] dissuading the witness [from] testify[ing] in this case."

Thereafter, Ignacio was summoned to the witness stand. On direct examination, the following colloquy transpired:

"[PROSECUTOR:] Now, sir, why are you here today?

"[IGNACIO:] I was subpoenaed by the district attorney's office against [defendant].

"[PROSECUTOR:] Are you here because you want to be?

"[IGNACIO:] Yes.

"[PROSECUTOR:] Now, ... have you been contacted by anybody, sir, trying to get you not to testify today?

"[IGNACIO:] At this time, yes.

"[PROSECUTOR:] When were you contacted?

"[IGNACIO:] Yesterday.

"[PROSECUTOR:] And by whom?

"[IGNACIO:] [Defendant]'s mother. [¶] ... [¶]

"[PROSECUTOR:] And what was her request of you, sir?

"[DEFENSE COUNSEL:] Objection. Hearsay based on the grounds I previously stated.

"THE COURT: Any response ... ?

"[PROSECUTOR:] I'll withdraw the question, Your Honor. [¶] ... And you came today regardless?

"[IGNACIO:] Yes."

b. *Standard of review.*

"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence." (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004; see *People v. Kipp* (1998) 18 Cal.4th 349, 371 ["A court abuses its discretion when its ruling 'falls outside the bounds of reason.' "].)

c. *Analysis.*

Defendant contends the dissuasion evidence was inadmissible because (1) he did not authorize his mother's attempt to suppress Ignacio's testimony; (2) the attempt did not occur in his presence; and (3) Ignacio "displayed no reluctance to answer questions posed to him by the trial court or the prosecution during voir dire, or during the examination in front of the jury." The Attorney General concedes "the court likely erred in admitting evidence that [defendant]'s mother attempted to dissuade Ignacio from testifying because such evidence was irrelevant to show Ignacio's demeanor, credibility, motive, or bias for testifying."

Assuming arguendo the trial court erroneously admitted the dissuasion evidence, we find such error harmless.

By constitutional mandate, "[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of ... the improper admission or rejection of evidence,

... unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson* ); accord, *People v. Callahan* (1999) 74 Cal.App.4th 356, 363.)[7]

In the instant case, it was not reasonably probable that a result more favorable to defendant would have been reached absent admission of the dissuasion evidence. The record demonstrates defendant grabbed a black ceramic coffee mug and entered the shed at the rear of the Tapia residence. Acosta followed him and was struck with either a "glass," "bottle," or "cup," resulting in facial lacerations, bruising, and swelling. Thereafter, black ceramic shards were found near the shed and one of defendant's hands was bleeding profusely. (See *People v. McGriff* (1984) 158 Cal.App.3d 1151, 1157 ["Although evidence against appellant was largely circumstantial, the circumstantial evidence was overwhelming."].) Defendant fled the scene and hid outside a neighbor's house. After the neighbor summoned the nearby deputies, defendant tried to flee once again but was captured. (See *People v. Visciotti* (1992) 2 Cal.4th 1, 60–61 ["The jury could infer from the actions of defendant immediately following the crime that his flight ... reflected consciousness of guilt."].) In addition, the record shows, prior to the battery at issue, (1) Acosta engaged in a friendly conversation with defendant and tried to hug him two or three times but was punched in the face; and (2) the guests who witnessed the punch were unarmed and, though upset, gave defendant room to leave the property without incident. Given these circumstances, self-defense could not be justified. (See *People v. Minifie* (1996) 13 Cal.4th 1055, 1064–1065 [" 'To justify an act of self-defense ..., the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '... any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.]' "].)

Maldonado, 2017 WL 945109, at *2–4 (footnote in original).

Here, the California Court of Appeal found no federal constitutional error. Maldonado, 2017 WL 945109, at *4 n.4. The pertinent question on federal habeas review is whether the state proceedings satisfied due process and "[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal quotation marks omitted) (quoting Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995)). In Holley, the petitioner was charged with

---

[7] Defendant asserts the more stringent "harmless beyond a reasonable doubt" standard prescribed in *Chapman v. California* (1967) 386 U.S. 18, 24, is the proper test of reversible error. We disagree. The application of ordinary rules of evidence does not implicate the federal Constitution; therefore, we review allegations of evidentiary error under *Watson*'s "reasonable probability" standard. (*People v. Harris* (2005) 37 Cal.4th 310, 336; *People v. Marks* (2003) 31 Cal.4th 197, 226–227; see *People v. Page* (2008) 44 Cal.4th 1, 42 ["In the absence of a violation of federal rights, we evaluate whether 'it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error.' "].)

multiple felony counts of lewd and lascivious acts on a child under fourteen and challenged the trial court's admission of a lewd matchbook and several sexually explicit magazines seized from the petitioner's bedroom. 568 F.3d at 1096. The Ninth Circuit denied habeas relief because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ [of habeas corpus]." Id. at 1101. "Absent such 'clearly established Federal law,'" the Ninth Circuit could not "conclude that the state court's ruling was an 'unreasonable application.'" Id. (quoting Carey v. Musladin, 549 U.S. 70, 77 (2006)).

This Court is bound by the Ninth Circuit's decision in Holley. Although circuit caselaw is not governing law under AEDPA, the Court must follow Ninth Circuit precedent that has determined what federal law is clearly established. Byrd v. Lewis, 566 F.3d 855, 860 n.5 (9th Cir. 2009). Further, Ninth Circuit "precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents." Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005) (en banc).

Petitioner contends that the introduction of Ignacio Tapia's dissuasion testimony resulted in a fundamentally unfair trial. (ECF No. 1 at 16–17). There is no Supreme Court holding that establishes the fundamental unfairness of admitting irrelevant or overtly prejudicial evidence. Holley, 568 F.3d at 1101. Thus, the California Court of Appeal's denial of relief with respect to the admission of Ignacio Tapia's dissuasion testimony was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

**B. Ineffective Assistance of Counsel**

In his second and third claims for relief, Petitioner asserts that trial counsel was ineffective for: (1) failing to request a limiting instruction regarding the dissuasion evidence, and (2) failing to argue that Christopher Acosta's repeated attempts to hug Petitioner triggered

Petitioner's right to self-defense. (ECF No. 1 at 23–38). Respondent argues that the state court's rejection of Petitioner's ineffective assistance of counsel claims was reasonable under clearly established Supreme Court precedent. (ECF No. 9 at 18–24).

Petitioner raised these ineffective assistance of counsel claims on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claims in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's ineffective assistance of counsel claims, the California Court of Appeal stated:

> **II. Defendant's claims of ineffective assistance of counsel must be rejected because the appellate record does not shed light on why his trial attorney acted or failed to act in the challenged manner.**
>
> To establish ineffective assistance of counsel, a defendant must show (1) defense counsel did not provide reasonably effective assistance in view of prevailing professional norms; and (2) defense counsel's deficient performance was prejudicial. (See *People v. Oden* (1987) 193 Cal.App.3d 1675, 1681, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) "It is ... particularly difficult to establish ineffective assistance of counsel on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)
>
> The record before us " 'does not illuminate the basis for the attorney's challenged acts or omissions ....' " (*People v. Silvey* (1997) 58 Cal.App.4th 1320, 1329.) Defense counsel was never asked to explain why she did not request a limiting instruction with respect to the dissuasion evidence or why she did not argue in her summation that defendant was entitled to protect himself from Acosta's repeated attempts to embrace him. "When ... defense counsel's reasons for conducting the defense case in a particular way are not readily apparent from the record, we will not assume inadequacy of representation unless there could have been ' "no conceivable tactical purpose" ' for counsel's actions. [Citations.]" (*People v. Earp* (1999) 20 Cal.4th 826, 896; see *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [" ' "[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " ' "].) Here, we cannot conclude defense counsel's conduct had no conceivable tactical purpose. As previously noted, Ignacio's testimony pertaining to defendant's mother's effort to dissuade him from testifying was limited. Defense counsel may have believed a request for a limiting instruction would have imprudently drawn further attention to the matter. (See *People v. Hinton* (2006) 37 Cal.4th 839, 878; *People v. Freeman*

(1994) 8 Cal.4th 450, 495.) With regard to closing argument, "the right of self-defense is based upon the appearance of imminent peril to the person attacked" (*People v. Perez* (1970) 12 Cal.App.3d 232, 236) and " 'any right of self-defense is limited to the use of such force as is reasonable under the circumstances' " (*People v. Minifie*, *supra*, 13 Cal.4th at p. 1065). Defense counsel may have concluded an attempt to depict defendant's act of smashing a ceramic coffee mug on an unarmed relative's head as a sensible and proportionate response to the "peril" of receiving a conciliatory hug would have been futile. (See *Yarborough v. Gentry* (2003) 540 U.S. 1, 8 ["[J]udicious selection of arguments for summation is a core exercise of defense counsel's discretion. [¶] When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."].) Accordingly, we reject defendant's claims of ineffective assistance of counsel.

Maldonado, 2017 WL 945109, at *4–5.

### 1. Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland, 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (citing Strickland, 466 U.S. at 690). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Id. at 689.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466

13

U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693). A reviewing court may review the prejudice prong first. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2. Analysis

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As noted by the California Court of Appeal, one tactical reason for not requesting a limiting instruction would be to prevent Ignacio Tapia's testimony regarding Petitioner's mother from being unduly emphasized. The dissuasion testimony constituted one page of Ignacio's approximately fifty-five pages of testimony. (1 RT 78–133). Additionally, "[w]hen counsel focuses on some issues to the exclusion of others"—such as not arguing that smashing a ceramic

mug on an unarmed relative's head as a reasonable and proportionate response in self-defense to the appearance of "imminent peril" by way of repeated attempts to hug Petitioner—"there is a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The Supreme Court has recognized that this "presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)). Petitioner has failed to overcome the presumption that counsel's action might be considered sound trial strategy.

Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claims was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second and third claims, and they should be denied.

## V.

## RECOMMENDATION AND ORDER

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

Further, the Clerk of Court is DIRECTED to amend the caption in this matter to reflect the name of John Garza as Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 3, 2018**

UNITED STATES MAGISTRATE JUDGE

16